UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIAM LYMAN, Individually and for Others Similarly Situated,<br><br>v.<br><br>GAS GATHERING SPECIALISTS, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

# ORIGINAL COMPLAINT

## SUMMARY

1. William Lyman (Lyman) brings this Fair Labor Standards Act (FLSA) lawsuit to recover the unpaid overtime wages and other damages owed to him by Gas Gathering Specialists, Inc. (GGS).

2. Lyman and the other GGS employees regularly work more than 40 hours in a week.

3. But GGS does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime, Lyman received a daily rate with no overtime compensation.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court because GGS conducts substantial business in this District and Division.

7. Lyman performed work for GGS in in this District and Division.

## THE PARTIES

8. Lyman worked for GGS from May 2019 until December 2020.

9. Lyman was a welding inspector for GGS.

10. Lyman worked for GGS throughout the United States including, Minnesota, Nebraska, Wisconsin, and Iowa.

11. Throughout his employment with GGS, Lyman was paid a day-rate with no overtime compensation.

12. Lyman's consent to be a party plaintiff is attached as Exhibit A.

13. Lyman brings this action on behalf of himself and all other similarly situated workers who were paid by GGS's day-rate scheme.

14. Each of these workers were paid a flat amount for each day worked and GGS failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors of GGS who were paid a day-rate with no overtime in the past 3 years (Putative Class Members).**

16. The Putative Class Members are easily ascertainable from GGS's business records.

17. GGS may be served by serving their registered agent for service of process, CT Corporation System, 1010 Dale St N., St. Paul, Minnesota, 55117.

## COVERAGE UNDER THE FLSA

18. At all times hereinafter mentioned, GGS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, GGS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, GGS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

21. At all times hereinafter mentioned, Lyman and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

22. GGS provides inspectors for operators throughout the United States to inspect pipelines and storage facilities for the transportation and storage of natural gas.

23. To provide its services, GGS hires inspectors (like Lyman) to perform work.

24. Lyman would perform routine inspections on pipeline constructions.

25. After running inspections on new pipeline construction, Lyman would draft and turn in reports to his construction manager.

26. Lyman's inspector duties were governed by GGS's and its clients' policies, procedures, and checklists.

27. Lyman's inspector duties did not involve independent judgment or an advanced degree.

28. The Putative Class Members also performed routine inspections on pipeline and storage facilities and provided reports to construction managers.

29. Lyman and the Putative Class Members job duties made them non-exempt employees.

30. GGS's inspectors worked for it on a day-rate basis and make up the proposed Putative Class.

31. These inspectors perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

32. Because of GGS's day-rate pay practice, Lyman and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

33. Because of GGS's day-rate pay practice, Lyman and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

34. For example, throughout Lyman's employment with GGS, he was paid on a day-rate basis.

35. Lyman and the Putative Class Members normally worked 10 to 12 or more hours a day.

36. Lyman and the Putative Class Members would regularly work 6 days a week.

37. GGS never guaranteed Lyman and/or the Putative Class Members a salary.

38. GGS never paid Lyman or the Putative Class Members on a salary basis.

39. Lyman was required to report the days worked to GGS.

40. GGS directly paid Lyman and the Putative Class Members.

41. The Putative Class Members worked hours similar to Lyman's.

42. During Lyman's employment with GGS, it and its clients exercised control over all aspects of his job.

43. GGS and/or the company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Lyman and the Putative Class Members.

44. GGS and its clients determined Lyman's rates of pay and his work schedule while he was working for GGS.

45. Failure to pay non-exempt inspectors a salary violates the FLSA.

46. The Putative Class Members were denied overtime by the same illegal pay practice (GGS's day-rate pay scheme) that resulted in Lyman being denied overtime wages.

47. GGS's policy of failing to pay its employees, including Lyman, overtime violates the FLSA because these workers are non-exempt.

48. GGS's day-rate scheme violates the FLSA because Lyman and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

49. As set forth herein, GGS has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer

than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

50. GGS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

51. GGS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

52. Accordingly, Lyman and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

53. Lyman incorporates all previous paragraphs and alleges that the illegal pay practices GGS imposed on Lyman were likewise imposed on the Putative Class Members.

54. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

55. Numerous other individuals who worked with Lyman indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

56. Based on his experiences and tenure with GGS, Lyman is aware that GGS's illegal practices were imposed on the Putative Class Members.

57. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

58. GGS's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

59. Lyman's experiences are therefore typical of the experiences of the Putative Class Members.

60. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

61. Lyman has no interests contrary to, or in conflict with, the Putative Class Members.

62. Like each Putative Class Member, Lyman has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

63. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

64. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and GGS will reap the unjust benefits of violating the FLSA.

65. Furthermore, even if some of the Putative Class Members could afford individual litigation against GGS, it would be unduly burdensome to the judicial system.

66. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

67. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

68. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

69. Lyman demands a trial by jury.

## RELIEF SOUGHT

70. WHEREFORE, Lyman prays for judgment against GGS as follows:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding GGS liable for unpaid back wages due to Lyman and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    d. For an Order granting such other and further relief as may be necessary and appropriate.

Dated: October 27, 2021                    Respectfully submitted,

By: */s/ Michele R. Fisher*
Michele R. Fisher
MN Bar No. 303069
**NICHOLS KASTER, PLLP**
4700 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
Email: Fisher@nka.com

**Michael A. Josephson**
Texas Bar No. 24014780
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**